695 So.2d 299 (1997)
THE FLORIDA BAR, Complainant,
v.
Robert Scott LAING, Respondent.
Nos. 83457, 87048.
Supreme Court of Florida.
April 24, 1997.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Ronna Friedman Young, Bar Counsel, Fort Lauderdale, for Complainant.
John Beranek of Ausley & McMullen, Tallahassee, for Respondent.
PER CURIAM.
We have for review the complaint of The Florida Bar (the Bar) and the referee's report regarding alleged ethical breaches by Robert Scott Laing. We have jurisdiction. Art. V, § 15, Fla. Const.
The referee made the following findings of fact based on evidence presented at the disciplinary hearing:
COUNT I
3. In Case No. 93-51,395(15E), respondent was retained by Luba Delaney and her company, Organizational Design Concepts, Inc., to represent them in a claim against Advertising and Media Placement and related parties.
4. As the case proceeded, numerous conflicts and difficulties arose between Laing and Delaney. Additionally, one of the potential defendants filed a Bar Grievance against Laing concerning his conduct in the case. Mrs. Delaney terminated Laing's service and requested a return of her retainer. After much fussing about that, Laing agreed to refund to Mrs. Delaney $900.00. He sent two payments of $300.000 each and only sent the remaining payment of $300.00 just days before the hearing in this matter. He did not promptly refund the monies owed to Mrs. Delaney.

*300 COUNT II

5. In Case Number 93-51,082(15E), on or about May 11, 1991, the respondent was arrested in the State of Ohio and charged with operating a motor vehicle under the influence of alcohol. A not guilty plea was entered in the Municipal Court of Van Wert, Ohio, and a trial date was set. Prior to that trial date, Mr. Laing's attorney withdrew the not guilty plea and entered a guilty plea. A new trial date was set for September 6, 1991, in case Mr. Laing did not follow through on confirmation of the guilty plea. When Mr. Laing did not confirm his change of plea, a jury trial was convened September 20, and Mr. Laing failed to appear and the Court issued an arrest warrant.
The Bar filed its Complaint in these proceedings on or about March 30, 1994. At our hearing, the Bar introduced the deposition of the Ohio Judge, Judge Campbell. Mr. Laing gave his version of the events, and presented testimony from his Ohio counsel.
COUNT III
6. In Case No. 93-51,095(95E), on or about October 1, 1992, at approximately 11:25 P.M., the respondent was outside of Willie's Pub in unincorporated Palm Beach County, Florida. He was observing a situation between Deputy Daniel Wood of the Palm Beach County Sheriff's Office and Alejandro Gonzalez.
Respondent approached the pair and the Deputy and the respondent got into a discussion as to the respondent's presence. Deputy Wood asked the respondent to move along, and after some mental and physical gymnastics, Deputy Wood arrested the respondent for resisting an officer without violence.
The respondent apparently felt he had a legal right to stand in a public place but the Deputy, a trial court, and the Fourth District of Appeal felt otherwise.
On or about March 19, 1993, the respondent was convicted of resisting an officer without violence, which conviction was affirmed on appeal or about March 21, 1994.
COUNT IV
7. In Case No. 94-50,695(15E), the respondent represented a John A. Notte and his wife, Sandra, in a personal injury matter that was originally started by attorney Raymond Christian. As that case progressed, Mrs. Notte divorced Mr. Notte. During that dissolution action, the Court, in that case, ordered that twenty-five percent of any recovery in the personal injury case would be held in escrow and not to be dispersed to any of the parties pending the final hearing on the dissolution.
A $15,000.00 recovery was had in the personal injury action, and after attorney's fees and costs, $1,750.00 was held by the respondent pursuant to the Court's order in the dissolution case.
Incorporated in the final judgment of the dissolution case was a marital rights settlement agreement which provided that the $1,750.00 held by Laing would be distributed to the wife.
Mr. Laing did not distribute the $1,750.00 on the date of the final judgment and did not disperse the sum within a reasonable time after the final judgment despite the demands of Mrs. Notte.
Finally, Mrs. Notte received a check on September 14, 1993, in the amount of $1,705.15 (not the $1,750.00 ordered by the Court, the respondent having deducted $44.85 for telephone calls charged to Mr. John Notte).
Mr. Laing did not have a court order authorizing him to deduct the $44.85, and sometime subsequent to the complaint being filed in these proceedings, the respondent provided a check to Mrs. Notte in the amount of $50.00.
The respondent admitted he had erred in respect to his action in this Count.
COUNT V
8. In Case No. 94-50,701(15E), on or about February 1, 1991, Karen Hall paid the respondent $720.00 as a retainer for legal services having to do with prepaid rent and purchase option on property in Lake Clarke Shores, Florida.

*301 Ms. Hall wished to be released from her lease obligation and purchase agreement and get a return of the payments she had made thereon.
It is obvious that respondent took advantage of the monies previously paid by Karen Hall in his taking over the option and eventual occupancy and purchase of the property.
While Laing and Hall eventually settled their differences on the amount of money Hall claimed [he owed] her, a lot of time and grief went by.
While a referee doesn't find that the respondent violated any law, it is certainly apparent that the respondent used his legal abilities to successfully "stoke" Barbara Silvester, which resulted in a closing favorable to Mr. Laing. However, Mrs. Silvester was represented by competent counsel, who had the ability to fight fire with fire, if that were the course elected.
It is obvious to the referee that there was conflict between Karen Hall and Scott Laing and that the respondent should have made certain disclosures to Karen Hall and should have advised in writing where the conflicts could arise.
COUNT VI
9. In Case No. 93-51,564(15E), Barbara Silvester was the owner of property in Lake Clarke Shores, Florida, that had been [leased to] respondent's client, Karen Hall, pursuant to a lease with a purchase option.
Respondent assumed Karen Hall's interest in that property and moved into the property.
Respondent then began to jockey for certain positions favorable to him in this real estate matter, and, while litigation arose in this business transaction, it was settled by stipulation, which provided that respondent purchase the property.
In addition to his "tactics" with Ms. Silvester, respondent also attempted to have more documentary taxes placed on the deed than the purchase allowed.
The referee believes that this was a design so that respondent could obtain a higher mortgage.
Based on these findings of fact, the referee reached the following conclusions concerning guilt:
COUNT I
The referee's conclusions and recommendations are a culmination of the findings in the six counts which include certain "technical" findings in each count accordingly. Some of the respondent's responses remind the referee of probation violation hearings when the defense attorney would plead "... but they are only technical violations judge." The referee concludes that none of the findings rose to the level of a criminal act, fraud, a willful violation of the law, or deceitful practice to the level requiring disbarment.
As to Count I, the referee finds that the respondent has technically violated rules 4-1.3 [A lawyer shall act with reasonable diligence and promptness in representing a client.]; 4-1.4(a) [A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.]; 4-1.5(f)(2) [Each participating lawyer or law firm shall sign the contract with the client... The client shall be furnished with a copy of the signed contract.]; 4-1.7(b)[A lawyer shall not represent a client if the lawyer's exercise of independent professional judgment in the representation of that client may be materially limited by the lawyer's own interest.]; and 4-1.15(b) [A lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive.].
COUNT II
The referee finds the respondent technically in violation of rule 4-3.4(c) [A lawyer shall not knowingly disobey an obligation under the rules of a tribunal.]. While the respondent did not appear for his trial in Ohio on September 20, 1991, there are sufficient mitigating circumstances and other explanations which, in the referee's *302 opinion, would bring this matter below that of one requiring severe sanctions against the respondent. This particular count smacks more of bad blood in small town politics than a wilful violation of a court order that required the severe sanctions that the Ohio Judge wanted to impose.
COUNT III
Again, by virtue of his Florida conviction of resisting an officer without violence, respondent has technically violated rules 3-4.3 [The commission by a lawyer of any act that is unlawful ... may constitute a cause for discipline.]; and 3-4.4 [Whether the alleged misconduct constitutes a felony or misdemeanor, The Florida Bar may initiate disciplinary actions regardless of whether the respondent has been tried, acquitted, or convicted in a court for the alleged criminal offense.] of the Rules of Discipline. Here, the referee finds the key word to be "may," in that the results of this action "may constitute a cause for discipline," and "The Florida Bar may initiate disciplinary actions ..." Such violations of the rules of discipline seem to be discretionary with the Bar, and the referee feels it is likewise, within his discretion to come down on the respondent or take all things into consideration. The referee feels that it was the attitude of the respondent, and his misplaced interpretation of constitutional law that put the Deputy in a position that to not arrest the respondent would have made the Deputy the loser in this store front confrontation, and make it appear the Deputy had lost control of the crowd.
COUNT IV
This is the easiest count on which to find the respondent in violation of rules 4-1.15(b) [A lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive.]; 4-4.4 [In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person.] of the Rules of Professional Conduct and Rule 5-1.1(a) [Money or other property entrusted to any attorney for a specific purpose is held in trust and must be applied only to that purpose.] of the Rules Regulating Trust Accounts, based upon the respondent's admission that he did not comply with the rules or regulations and that he was in error in doing so.
COUNT V
The referee finds that the respondent, if he had used the proper discretion, should not have entered into business transactions with his client that gave rise to the eventual legal proceedings and frustration as set forth by the facts. The referee finds that the respondent has violated rule 4-1.8(a) [A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client, ... unless: (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner that can be reasonably understood by the client; (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and (3) the client consents in writing thereto.].
By failing to keep Karen Hall reasonably informed and by failing to explain the situation to her to the extent that would allow her to make an informed decision, respondent violated rules 4-1.4(a) [A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.] and 4-1.4(b) [A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.].
By entering into the business transaction with Karen Hall and continuing to represent her when her interests and the respondent's interest were at odds, the referee finds that the respondent has violated rule 4-1.7(b) [A lawyer shall not represent a client if the lawyer's exercise of independent professional judgment in the *303 representation of that client may be materially limited by the lawyer's ... own interest.].
It appears that while the respondent did inform Karen Hall on a "more or less" basis, he did not strictly conform with the rules and put this in writing, nor did he clearly explain to Karen Hall the possible conflicts and her right to seek advice of independent counsel. In the referee's opinion, the respondent should have taken the initiative and ceased his representation of the client when he assumed the lease and option to purchase contract. The fact that Karen Hall eventually realized her hope that she could get out of the contract and what turned out to be a bad deal in the way she rented this property and agreed to buy it, and the fact that the respondent probably accomplished for her what she might not have been able to win in a court of law, none the less, the end doesn't justify the means and shouldn't relieve the respondent from his duty to follow the rules and put this stuff in writing.
COUNT VI
The referee finds the respondent engaged in deceitful acts in two instances in violation of rule 4-8.4(c) [A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.] of the Rules of Professional Conduct:
A. By requesting Karen Hall to falsely represent that their agreed upon rent was $500.00 when it was in fact, $950.00 per month in order to avoid a penalty under the landlord tenant act, and
B. By demanding that more documentary stamp taxes be placed on the deed than the purchase price allowed, and by tendering a check for the artificially inflated documentary stamp taxes in order to obtain a higher mortgage.
The Bar seeks review of the referee's conclusions concerning guilt, claiming that Laing's conduct under Count 1 embraces additional violations of the disciplinary rules. We disagree. Our review of the record shows that competent substantial evidence supports the referee's findings of fact and conclusions concerning guilt on Counts 1 through 6, and accordingly "this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee." Florida Bar v. MacMillan, 600 So.2d 457, 459 (Fla.1992). Furthermore, a party contesting the findings and conclusions "carries the burden of demonstrating that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions." Florida Bar v. Spann, 682 So.2d 1070, 1073 (Fla.1996). The present record does not "clearly contradict" the referee's conclusions concerning guilt on Count 1. We adopt the referee's findings of fact and conclusions concerning guilt on Counts 1 through 6.
Based on the above violations of the disciplinary rules, the referee recommended that the following disciplinary action be taken against Laing:
Because the referee finds that many of the violations alleged were more technical than unlawful, and that when one listens to these entire proceedings and takes them as a whole, that consideration should be given to both sides, and that neither side is a clear cut winner, the referee recommends that the respondent be suspended for ninety (90) days. The referee further recommends that the respondent be placed on a definite probation during which time the respondent shall, at his expense, complete... an ethics course.... Further, the respondent shall be monitored by a practicing member of The Florida Bar in his community during his first twelve months of the resumption of the practice of law following his ninety (90) day suspension. (Respondent had a lawyer appear at the hearing who offered to do such.)
When making the above findings and recommendations, the referee considered the personal history of the respondent and the fact that he was suspended [by] order of the Supreme Court on September 26, 1985, for sixty (60) days in Case No. 81-02880, 81-02881, 82-03298, 83-04702, and 84-09019. And that he received a private reprimand, and final on February 15, 1991, in Case No. 90-50988.
*304 The Bar seeks review of the referee's recommended discipline, arguing that disbarment is the appropriate discipline in light of the number of Laing's present violations and his prior record which consists of a sixty-day suspension in 1985[1] and a private reprimand in 1991.[2] We disagree.
This Court generally will not second-guess a referee's recommended discipline as long as that discipline has a reasonable basis in existing caselaw. Florida Bar v. Lecznar, 690 So.2d 1284 (Fla.1997). In the present case, however, we find the recommended discipline to be in conflict with numerous cases wherein we imposed greater discipline due to the cumulative effect of multiple violations.[3] Based on these prior cases, on the one hand, and the referee's recommended discipline, on the other, we find a ninety-one day suspension appropriate for Laing's conduct. As noted above, this is Laing's third disciplinary proceedinghis third strike at the ball, so to speakand proof of rehabilitation is due.
Robert Scott Laing is hereby suspended for ninety-one days from the practice of law in Florida. The suspension will be effective thirty days from the filing of this opinion so that he can close out his practice and protect the interests of existing clients. If Laing notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Laing shall accept no new business from the date this opinion is filed until the suspension is completed.
Pursuant to the provisions of Rule Regulating The Florida Bar 3-5.1(g), upon receipt of this order of suspension, Laing shall forthwith furnish a copy of the order to all his clients with matters pending in his practice. Furthermore, within thirty days after receipt of this order, Laing shall furnish staff counsel of the Bar with a sworn affidavit listing the names and addresses of all clients who have been furnished copies of the order.
Laing shall submit proof of rehabilitation prior to reinstatement. Upon reinstatement, he shall be on probation for one year, during which time his practice of law shall be monitored by a member of the Bar and he shall be required to take and pass the ethics portion of the Florida bar examination. Judgment for costs in the amount of $8,021.83 is entered in favor of The Florida Bar against Robert Scott Laing, for which sum let execution issue.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Laing was suspended in September 1985 for numerous violations of the disciplinary rules, including neglect, conduct adversely reflecting on fitness, charging an excessive fee, improper calculation of fee in a domestic case, inadequate preparation, dishonesty, and commission of a misdemeanor.
[2] Laing was privately reprimanded in February 1991 for several violations of the disciplinary rules, including failure to obtain a client's consent to settle and failure to notify a client of the receipt of settlement funds.
[3] The present case involves seventeen rule violations. (Laing's prior proceedings involved eleven violations, resulting in a sixty-day suspension, and two violations, resulting in a private reprimand.) Cf. Florida Bar v. Inglis, 660 So.2d 697 (Fla.1995) (disbarment appropriate for multiple violations of varied nature); Florida Bar v. Williams, 604 So.2d 447 (Fla.1992) (same); Florida Bar v. Mavrides, 442 So.2d 220 (Fla.1983) (same).