952 So.2d 510 (2006)
THE FLORIDA BAR, Complainant,
v.
Costell WALTON, Jr., Respondent.
No. SC05-774.
Supreme Court of Florida.
December 14, 2006.
Rehearing Denied March 16, 2007.
*511 John F. Harkness, Jr., Executive Director, Kenneth L. Marvin, Director of Lawyer Regulation, and John Anthony Boggs, Staff Counsel, The Florida Bar, Tallahassee, FL, Lorraine Christine Hoffmann, Bar Counsel, The Florida Bar, Fort Lauderdale, FL, and James David Camp, III, Chair, Seventeenth Judicial Circuit, Grievance Committee "A," for Petitioner.
Kevin P. Tynan and James O. Walker, III of Richardson and Tynan, PLC, Tamarac, FL, for Respondent.
PER CURIAM.
We have for review a referee's report regarding alleged ethical breaches by Costell Walton, Jr. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons explained herein, we approve the referee's recommendation that Walton be suspended for ninety-one days. We disapprove the referee's recommendation that Walton be ordered to reimburse Louis Asbate for attorney fees and costs incurred by him as a result of Walton's misconduct. We also disapprove the referee's recommendation that Walton have his practice evaluated by The Florida Bar's Law Office Management Assistance Service (LOMAS). Instead, we order Walton to take The Florida Bar's professionalism course.

FACTS
The Bar filed a single-count complaint against Walton. The complaint alleged Walton violated the Rules of Professional Conduct; committed an act that was unlawful or contrary to honesty and justice; failed to be professionally competent; failed to be reasonably diligent and prompt; and engaged in conduct prejudicial to the administration of justice, all pursuant to his representation of the plaintiffs in a civil case after a judgment in his clients' favor had been entered. A formal hearing was held on the complaint on October 10, 2005. The referee issued a report on November 14, 2005.
In the report, the referee found that Walton represented the plaintiffs in a civil suit against Louis and Dawn Asbate. The civil trial court awarded Walton's clients a judgment for $3000, plus $250 in costs with interest. The $3000 had been previously deposited into the registry of the court and was available to the plaintiffs at any time. Louis Asbate wanted to pay the costs immediately to avoid the possibility that the unpaid judgment would have a negative impact on his credit rating, but, on the advice of his counsel, waited a few months until his liability for attorney fees diminished. *512 Three months later, Asbate's attorney forwarded a check to Walton for the $250 in costs plus $4.08 to cover the seven percent interest for the three-month period.[1] The attorney also demanded a recorded satisfaction of judgment in return.
The referee found that Walton wrongfully refused to record a satisfaction of judgment as requested. After the opposing party filed a complaint against him with The Florida Bar, Walton told the Bar that he "had no obligation to Mr. Asbate." In a subsequent letter, he told the Bar that Asbate had "some mental disorder" and that he was a "liar."
In a chance meeting four months after the satisfaction of judgment was first requested, Walton told opposing counsel, for the first time, that the check for costs and interest which had been forwarded to him was twenty-three cents less than what he thought it should have been. Opposing counsel immediately provided the missing twenty-three cents, from his pocket, to resolve the matter. Walton refused to accept the money, insisting that the entire amount due be sent to him in one check. He returned the check that had been sent to him in May 2004 to opposing counsel.
Walton received what he considered satisfaction in full in November 2004. Although his clients had been paid what they were owed according to Walton's own calculation, he still refused to provide a recorded satisfaction of judgment. Finally, in January 2005, he sent an unrecorded satisfaction of judgment directly to Asbate. Asbate ultimately recorded the satisfaction of judgment himself, after paying the requisite fee.
More than a year after the judgment had been satisfied, and well after Asbate had recorded the satisfaction of judgment, Walton filed a "Motion for Clarification and/or Determination of When Judgment was Satisfied" in the county court case, which had been closed for some time. The trial court determined the amount originally tendered, $254.08, had been short by only fourteen cents, not the twenty-three cents calculated by Walton.
The referee found Walton filed the motion to give himself a defense in the Bar disciplinary proceedings and that the motion was "frivolous and prejudicial to the administration of justice." Based upon careful observation of the demeanor of the witnesses at the final hearing, the referee found that Walton's conduct had been willful, intentional, and motivated by personal antipathy toward Asbate.
With regard to guilt, the referee found that Walton's conduct violated Rules Regulating the Florida Bar 3-4.2 (violating Rules of Professional Conduct is a cause for discipline), 3-4.3 (commission by a lawyer of any act that is unlawful or contrary to honesty and justice can be cause for discipline), 4-1.1 (professional competence), 4-1.3 (reasonable diligence and promptness), 4-8.4(a) (violation of Rules of Professional Conduct constitutes misconduct), and 4-8.4(d) (conduct prejudicial to the administration of justice, including disparaging litigants).
With regard to discipline, the referee recommended that Walton be suspended for ninety-one days; ordered to pay restitution to Asbate for costs and legal fees, if any, incurred as a result of Walton's misconduct; undergo evaluation of his law office management by LOMAS as a condition for reinstatement; and pay the Bar's costs. In recommending a ninety-one-day *513 suspension, the referee recognized that neglecting a client matter is generally punishable by a suspension of less than ninety days, but justified the more severe penalty by the cumulative nature of Walton's misconduct and the fact that his actions had been motivated by his personal animus toward the opposing party.
The referee found three aggravating factors: prior discipline, dishonest or selfish motive, and substantial experience in the practice of law. The referee did not find any mitigating factors.
Walton petitioned for review of the referee's findings of fact and conclusions as to guilt and the referee's recommended discipline.[2]

ANALYSIS
Findings of Fact and Conclusions as to Guilt
"The party contending that the referee's findings of fact and conclusions as to guilt are erroneous carries the burden of demonstrating that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions." Fla. Bar v. Nowacki, 697 So.2d 828, 832 (Fla.1997). Walton failed to satisfy this burden, because there is competent, substantial evidence in the record to support the referee's findings in this case.
The crux of Walton's argument on this issue was not that the factual findings are unsupported, but that the findings that he violated rules 4-1.1 (competent representation), 4-1.3 (reasonable diligence and promptness), and 4-8.4(d) (conduct prejudicial to the administration of justice) are not supported by the facts. Further, Walton argues that because rules 3-4.2, 3-4.4, and 4-8.4(a) are all "piling on" violations, i.e., violations based on a respondent violating some other rule, these violations are also unsupported.
Contrary to Walton's argument, the facts found by the referee support the referee's conclusion that Walton failed to provide competent representation to his clients with reasonable diligence and promptness, and that he engaged in conduct prejudicial to the administration of justice. Although attorneys may not have a duty to prepare and record a satisfaction of judgment until full satisfaction is received,[3] Walton had a duty to his clients to obtain the money they were owed as promptly as possible. Reasonable diligence and competent representation on Walton's part required him to inform his clients that they had received payment and that it was short by a mere twenty-three cents. If his clients had told him they were unwilling to accept a payment short by that amount, his duty to his clients would have then required him to immediately communicate the shortage and his clients' unwillingness to waive it to opposing counsel so the shortage could be quickly cured. Instead, he did nothing. His clients were forced to wait, from May 2004 (the time the first offer, short by twenty-three cents, was tendered) until November 2004 (the time the complete amount, with the additional twenty-three cents, was received) to obtain reimbursement for their costs. This was longer than the time between the entry of judgment and the original proffer. It is clear from these events that Walton put his own negative feelings *514 toward Asbate ahead of the interests of his clients.
Walton's failure to record the satisfaction of judgment prior to Asbate's recording it, despite the fact he had a statutory obligation to do so, was prejudicial to the administration of justice.[4] Also prejudicial to the administration of justice were his representations to the Bar that the opposing party had some kind of mental disorder and was a liar, as well as his filing of the motion for clarification in the trial court months after the matter had been closed. The only conceivable reason Walton had to file the motion was so he could argue before the instant referee that the amount tendered in May 2004 was not full satisfaction of the judgment. That motive is clear because, by the time he filed the motion, the judgment had been satisfied and the satisfaction of judgment had been recorded.
The findings of fact and the record are sufficient to support the referee's findings that Walton's conduct violated Rules Regulating the Florida Bar 4-1.1, 4-1.3, and 4-8.4(d). These violations are sufficient to support the findings that Walton also violated rules 3-4.2, 3-4.4, and 4-8.4(a). Accordingly, we approve the referee's findings of guilt.
Recommended Discipline
Generally, this Court will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Brown, 905 So.2d 76, 83-84 (Fla.2005); Fla. Bar v. Miller, 863 So.2d 231, 235 (Fla.2003). In this case, the referee recommends that Walton be suspended for ninety-one days; be ordered to pay Asbate's attorney's fees and costs, if any, caused by Walton's conduct; be ordered to have his law office evaluated by LOMAS; and be ordered to pay the Bar's costs.
The Ninety-One-Day Suspension
The recommendation of a ninety-one-day suspension has a reasonable basis in the case law and the standards for the reasons discussed below.
We discuss the standards first. The Standards for Imposing Lawyer Sanctions cited by the referee, 4.42 and 6.22, support a suspension, but do not distinguish between rehabilitative and nonrehabilitative suspensions. As Walton concedes a suspension is appropriate, but argues that a ten-day suspension is the appropriate length, the standards are helpful to our analysis in this case only as a starting point.
We now address whether the recommendation has a reasonable basis in the case law. The case of Florida Bar v. Nunes, 734 So.2d 393 (Fla.1999), provides guidance. In that case, the Court suspended an attorney for three years after he made disparaging remarks concerning opposing counsel and trial judges and filed a frivolous lawsuit against several former clients seeking to recover, in quantum meruit, income lost to him by virtue of his disciplinary suspension.
*515 In the case currently before the Court, Walton failed to inform his clients that an amount short by pennies had been tendered in satisfaction so that they could make an informed decision as to whether they were willing to waive the shortage. He failed to tell opposing counsel of the shortage so that the de minimis mistake could be rectified. Then, after the shortage was rectified, he failed to provide a recorded satisfaction of judgment, as required by statute. In addition, he told the Bar that Asbate, who had complained to the Bar, was a "liar" and had a "mental disorder." Months after the satisfaction of judgment had been recorded, Walton filed a frivolous motion in the trial court to try to create a defense for himself in the Bar disciplinary proceeding.
Further, Walton has been less than candid with the referee and this Court. At the hearing before the referee, Walton claimed his failure to record the satisfaction was an "oversight." In his brief, he claimed he sent the unrecorded satisfaction directly to the opposing party, not opposing counsel, for review. These explanations are inconsistent.
Walton's actions were motivated by his personal, negative feelings toward Asbate. The pettiness of his behavior hurt his clients, the opposing party, and, ultimately, the profession. Walton's conduct also violated his oath of admission to the Bar when he swore to "not counsel or maintain any suit or proceedings which shall appear to me to be unjust, nor any defense except such as I believe to be honestly debatable under the law of the land"; to "employ for the purpose of maintaining the causes confided to me such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law"; to "abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged"; and to never "delay anyone's cause for . . . malice."
We reject Walton's argument that the referee placed too much emphasis on his prior disciplinary history. In this case, Walton has been previously disciplined three times. See Fla. Bar v. Walton, 545 So.2d 1369 (Fla.1989) (public reprimand); Fla. Bar v. Walton, 601 So.2d 554 (Fla. 1991) (ten-day suspension for a criminal conviction); Fla. Bar v. Walton, 613 So.2d 12 (Fla.1993) (sixty-day suspension and two years' probation for trust account violations). Walton frankly admits his prior history should subject him to an increased sanction, but argues that it is not so egregious or recent enough to warrant a drastic increase in his sanction. Even though we note the most recent discipline occurred thirteen years ago, we find that Walton's is not the kind of "minor misconduct" that can be ignored after seven years.[5] We are inclined to agree that Walton's disciplinary history would not support an increase from what would otherwise merit a ten-day suspension to a ninety-one-day suspension. However, we disagree that Walton's conduct would merit no more than a ten-day suspension in the absence of a disciplinary history. Walton used the law and the court system to engage in a petty vendetta. The fact that he has been disciplined on three prior occasions merely confirms the propriety of a ninety-one-day suspension in this case.
*516 As an officer of the court, Walton should have been able to curb and control such childish peevishness as was demonstrated here. When one considers the time and resources wasted, by the parties, the attorneys, the trial court, the Bar, the referee, and, now, this Court, over twenty-three (or fourteen) cents, it is clear that a ninety-one-day suspension is appropriate.
As the referee's recommendation for a ninety-one-day suspension has a reasonable basis in case law and the standards, we approve that portion of the referee's recommendation of discipline and suspend Walton for ninety-one days.
Restitution
Walton argues that the referee's recommendation that he be ordered to provide restitution to Asbate for the attorney's fees and costs is inappropriate. We agree. The Court has a firmly established policy against awarding restitution to third parties in disciplinary matters. In 1989, in Florida Bar v. Della-Donna, 583 So.2d 307 (Fla.1989), we stated that "[d]isciplinary actions cannot be used as a substitute for what should be addressed in private civil actions against attorneys. They are not intended as forums for litigating claims between attorneys and third parties. . . . We cannot and should not turn restitution as a condition to practicing our profession into a judgment for a third party." Id. at 312 (citations omitted).
Rule 3-5.1(i) of the Rules Regulating the Florida Bar is in accord. It provides that a referee may order restitution if a "respondent has received a clearly excessive, illegal, or prohibited fee or . . . the respondent has converted trust funds or property." Neither of these situations exists here.
Accordingly, we disapprove the referee's recommendation concerning restitution.
LOMAS
The referee's recommendation that Walton be ordered to have his law firm evaluated by LOMAS is inappropriate under these circumstances. The recommendation does not agree with the referee's findings that Walton's actions were intentional and motivated by a personal animus. LOMAS evaluation would be appropriate if Walton's misconduct were the result of sloppy management or inadvertence. After considering the facts and violations found by the referee, we hereby require Walton to attend and complete additional training in professionalism rather than undergo a LOMAS evaluation.

CONCLUSION
Accordingly, Costell Walton, Jr. is hereby suspended from the practice of law for ninety-one days. In addition, as a condition of reinstatement, Walton must submit proof that he has attended The Florida Bar's professionalism course. Walton's suspension will be effective thirty days from the filing of this opinion so that Walton can close out his practice and protect the interests of existing clients. If Walton notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Walton shall accept no new business from the date this opinion is filed until he is reinstated pursuant to Rule Regulating the Florida Bar 3-7.10.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for recovery of costs from Costell Walton, Jr. in the amount of $3,128.95, for which sum let execution issue.
It is so ordered.
*517 LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Judgment was entered on February 12, 2004. The check for $254.08 was sent to Walton on May 10, 2004.
[2] Walton also petitioned for review of the referee's denial of Walton's motion to dismiss the Bar's complaint. However, as he did not raise this issue in his briefs, he has abandoned it.
[3] See § 701.04(1), Fla. Stat. (2005).
[4] Section 701.04(1), Florida Statutes, provides in pertinent part (emphasis added):

Whenever the amount of money due on any mortgage, lien, or judgment shall be fully paid to the person or party entitled to the payment thereof, the mortgagee, creditor, or assignee, or the attorney of record in the case of a judgment, to whom such payment shall have been made, shall execute in writing an instrument acknowledging satisfaction of said mortgage, lien, or judgment and have the same acknowledged, or proven, and duly entered of record in the book provided by law for such purposes in the proper county.
[5] Standard 9.22(a) of the Florida Standards for Imposing Lawyer Sanctions provides that prior disciplinary offenses may be considered in aggravation except that a "finding of minor misconduct shall not be considered as an aggravating factor" after "7 or more years in which no disciplinary sanction has been imposed."